UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF
CARPENTERS' EMPLOYEE BENEFITS FUND;
TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF
CARPENTERS' ANNUITY FUND; TRUSTEES OF
CARPENTERS' PENSION TRUST FUND - DETROIT AND
VICINITY; TRUSTEES OF THE DETROIT CARPENTRY
JOINT APPRENTICESHIP AND TRAINING FUND;
TRUSTEES OF THE U.B.C. ADVANCEMENT FUND;
TRUSTEES OF THE CARPENTERS' WORKING DUES
FUND; TRUSTEES OF THE CARPENTERS' SPECIAL
ASSESSMENT FUND; THE MICHIGAN REGIONAL
COUNCIL OF CARPENTERS, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA;

No. 2:14-cv-11393
Hon. Laurie J. Michelson

     Plaintiffs;

and

COMERICA BANK,

     Intervening Plaintiff;

v.

H.B. STUBBS COMPANY, n/k/a H.B. STUBBS COMPANY,
L.L.C.; H.B. STUBBS HOLDINGS, INC.; H.B. STUBBS
COMPANY, L.L.C. – EAST; H.B. STUBBS COMPANY,
L.L.C. – WEST; H.B. STUBBS PROPERTIES, L.L.C;
SCOTT STUBBS; STEPHEN H. STUBBS; and KENNETH
W. JACOBSON;

     Defendants.

---

## OPINION AND ORDER GRANTING IN PART
## DEFENDANTS' MOTION TO DISMISS [36]

This case presents the following legal question: assuming a company agreed to, but did

not pay contributions to an employee-benefit plan governed by ERISA, are those due-and-owing

contributions plan assets such that a company official violates fiduciary duties owed to the plan

by paying the company's other creditors instead of the plan? Plaintiffs are the trustees of various

employee-benefit funds (e.g., the Trustees of Michigan Regional Council of Carpenters' Employee Benefits Fund) ("the Trustees"). In Count III of a four-count complaint they accuse three officers of various companies operating under the "H.B. Stubbs" name—Defendants Scott Stubbs ("Scott"), Stephen H. Stubbs ("Stephen"), and Kenneth W. Jacobson ("Jacobson")—of breaching fiduciary obligations owed to the funds under the Employee Retirement Income Security Act of 1974. The Trustees say that "numerous cases from [the Eastern District of Michigan] confirm . . . that an individual defendant violates the applicable ERISA sections by paying other creditors instead of making benefit payments because benefit payments become fund property once they are due and owing." (Dkt. 51, Pl.'s Resp. to Def.'s Mot. to Dismiss at 9.) Before the Court is Defendants' motion to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Scott's, Stephen's, and Jacobson's decisions on which bills to pay were corporate, not fiduciary, in nature. Although the Court's ruling rests primarily on a different (but related) rationale, the Court does agree with Defendants that Count III fails to state a plausible breach-of-fiduciary-duty claim. It will thus be dismissed from this suit.

## I.

Because Defendants have moved pursuant to Rule 12(b)(6), the Court accepts as fact all of the non-conclusory allegations in the Complaint and draws reasonable inferences from those well-pled allegations in the Trustees' favor. *See Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). The following summary, although it includes some background allegations from Defendants' motion, adheres to this standard.

The H.B. Stubbs entities are, or perhaps more accurately, were, in the business of "exhibit and event marketing." (Dkt. 36, Defs.' Mot. to Dismiss at 5.) With locations in both Michigan and Utah, the H.B. Stubbs entities helped design and set up exhibits at shows around

the country, including, for example, the North American International Auto Show in Detroit, Michigan. (*Id.*) Apparently, much of the entities' work was tied to the automotive industry, and, with the bankruptcy of General Motors, "H.B. Stubbs was hit hard . . . to the tune of approximately $1 million." (*Id.*)

More recently, the H.B. Stubbs entities lost three customers constituting half their volume. (*Id.* at 6.) This caused the entities to downsize and, in March 2014, seek a $2.7 million forbearance with their lender, Comerica Bank. (*Id.*; Dkt. 31, Comerica's Mot. to Intervene Ex. A, Forbearance Agreement.) The entities argue that "Comerica has a first priority security interest on all of the assets of each of the H.B. Stubbs entities to secure its loan—which, by any calculation, is in excess of the value of the assets of H.B. Stubbs." (*Id.*) (Comerica has intervened in this lawsuit to pursue this interest. (Comerica's Mot. to Intervene at ¶¶ 16, 17, 21; Dkt. 48, Comerica's Concurrence in Defs.' Mot. to Dismiss at 5.)) Defendants add that, "[o]ver the years," the Stubbs family put in "millions of their own funds in an effort to support the company." (Defs.' Mot. to Dismiss at 6.) Nonetheless, H.B. Stubbs is now winding down its affairs. (*See id.*)

Given the financial condition of the H.B. Stubbs entities, Count III of the Trustees' Complaint, the only (remaining) count asserting that Scott, Stephen, and Jacobson are personally liable, is critical to the Trustees' ability to recover in this lawsuit. The Trustees, representing an employee-benefits fund, a pension fund, and an apprenticeship fund (among others), say that the H.B. Stubbs entities employed participants of their funds to work on various construction projects in Michigan. (Dkt. 1, Compl. ¶ 26.) According to the Trustees, H.B. Stubbs was contractually obligated to make contributions to their funds for the benefit of the people it employed, but failed to make over $500,000 worth of contributions. (*See* Compl. ¶¶ 14–18.) The

3

Trustees also maintain that the unpaid contributions became "plan assets" within the meaning of ERISA "at the time they became due." (Compl. ¶ 28.) And that Scott, Stephen, and Jacobson, "as owners and/or officers of H.B. Stubbs, personally exercised authority and control over H.B. Stubbs' unpaid fringe benefit contributions." (Compl. ¶ 29.) Building on these last two assertions, the Trustees conclude that the three officers breached fiduciary obligations owed to their funds under ERISA by "directing that H.B. Stubbs' assets . . . be paid to other creditors and/or parties instead of being deposited with [the] [f]unds." (Compl. ¶ 31.) Accordingly, say the Trustees, Scott, Stephen, and Jacobson are "personally liable" to the funds in the amount of $543,916.24. (Compl. ¶ 33.)

Defendants believe that even accepting all of these allegations as fact, the Trustees' narrative does not state a claim upon which relief may be granted. They thus move to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally*, Dkt. 36, Defs.' Mot. to Dismiss.) Defendants also moved to dismiss Counts II and IV of the Complaint (Defs' Mot. at 6–7), but the Trustees have agreed to voluntarily dismiss those counts without prejudice (Dkt. 51, Pls.' Resp. to Defs.' Mot. to Dismiss at 5). Defendants have not moved to dismiss Count I, which seeks to hold only H.B. Stubbs liable. (*See* Defs.' Mot. at 6–7.)

## II.

Although the Trustees cite older cases in support of "lenient standards of 'notice pleading'" (*see* Pls.' Resp. at 6 n.2–3), the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), set the pleading standard. Under the plausibility standard articulated in those cases, when a defendant moves to dismiss pursuant to Rule 12(b)(6), a court can first cull legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The question then

4

becomes whether the remaining assertions of fact (and reasonable inferences drawn from them, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)), "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Although this plausibility threshold is more than "sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" its claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

Applying this legal standard, Defendants' motion asks the Court to find that it is implausible that Scott, Stephen, and Jacobson breached fiduciary obligations owed to the funds under ERISA by paying H.B. Stubbs' other creditors instead of the funds. This inquiry begins with whether Scott, Stephen, and Jacobson were fiduciaries under ERISA.

### III.

Under the Employee Retirement Income and Security Act of 1974,

> a person is a fiduciary with respect to a plan to the extent (i) *he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A) (emphasis added). Thus, under § 1002(21)(A)(i), which is the only statutory provision fairly implicated by Count III (*see* Compl. ¶¶ 29–30), the Trustees must plead factual matter permitting the reasonable inference that (1) H.B. Stubbs' unpaid benefit

contributions were "[plan] assets" and (2) Scott, Stephen, and Jacobson exercised "authority or control" over the "management or disposition" of those assets.

Starting with the "plan assets" prong, it is well-settled that if an employer withholds a portion of employee wages for the purpose of paying the funds, the withheld wages are plan assets. This rule derives directly from the Department of Labor's regulations implementing ERISA:

> the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, *or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan*, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3–102 (emphasis added); *see also Pantoja v. Edward Zengel & Son Exp., Inc.*, 500 F. App'x 892, 895 (11th Cir. 2012); *Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008); *In re Luna*, 406 F.3d 1192, 1206 n.13 (10th Cir. 2005) ("Where the issue is not *employer* contributions (as here), but rather *employee* contributions held by the employer, courts will recognize that the employer meets ERISA's statutory definition of a fiduciary." (emphasis in original)).

But as this Court reads Count III, the Trustees have only asserted that *employer* contributions are at issue. In particular, the Trustees aver that "*H.B. Stubbs' unpaid contributions* owed to the [f]unds became plan assets at the time they became due, within the meaning of ERISA." (Compl. ¶ 28 (emphasis added).) And in their response to Defendants' motion, they further assert that "an *employer's* contributions become plan assets when they become due." (Dkt. 51, Pls.' Resp. to Defs.' Mot. to Dismiss at 7–8 (emphasis added).) The Trustees do not mention withheld employee wages. So the proper question is this: under what circumstances do employer contributions become plan assets?

6

It appears that there is no answer to this question that binds this Court. The Department of Labor's regulations say nothing about when employer contributions become plan assets. *See Pantoja*, 500 F. App'x at 895 ("[The] federal regulations do not address *employer* contributions to an ERISA plan."); *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) ("Although the Department of Labor . . . has officially issued a regulation that specifies when *employee* contributions become assets, *see* 29 C.F.R. § 2510.3–102, it has not issued a formal rule governing when *employer* contributions become plan assets."). The Supreme Court has not ruled on the issue. *But see In re Halpin*, 566 F.3d at 291 (providing that the Supreme Court has "strongly indicated that unpaid contributions are not plan assets" (citing *Jackson v. United States*, 555 U.S. 1163 (2009)); *accord Pantoja*, 500 F. App'x at 896. And, based on the Court's research, the Sixth Circuit Court of Appeals has not yet squarely addressed the issue of when employer contributions become plan assets. *See also Trustees of Detroit Carpenters Fringe Ben. Funds v. Nordstrom*, 901 F. Supp. 2d 934, 940 (E.D. Mich. 2012) ("[T]he Sixth Circuit has not addressed the issue of when unpaid benefit contributions become plan assets."); *cf. Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 745–46 (6th Cir. 2014) (rejecting Blue Cross Blue Shield of Michigan's argument that the employer contributions it held were not plan assets; explaining that the summary plan description established that it was the employer's intent to "place plan assets for its self-funded Health Plan with BCBSM in its capacity [as the third-party administrator of the plan]"); *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67, 69 (6th Cir. 2012) ("We need not reach the question of whether the unpaid contributions were plan assets under the terms of the collective bargaining agreement, because even if they were, the [corporate officers] were not fiduciaries under ERISA and so cannot be personally liable.").

Although there is no binding authority on the issue of when employer contributions become plan assets, there is plenty of persuasive authority. The Court first reviews those cases, from outside this jurisdiction, that hold that employer contributions are not plan assets when due absent an agreement between the employer and the benefit funds to the contrary. The Court then examines the contrary authority from outside this district and seemingly contrary authority from this district.

## A.

The Department of Labor has stated that "'employer contributions become an asset of the plan only when the contribution has been made.'" *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009) (citing Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin 2008-1*, at 1–2 (Feb. 1, 2008); U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993); U.S. Dep't of Labor, Advisory Op. No. 2005-08A (May 11, 2005)). Indeed, the Department has explained that its enforcement practices turn on the distinction between employee and employer contributions:

> When an employer misappropriates contributions that the *employee* has made to ERISA funds, the Secretary [of the Department of Labor] sues the employer directly. In contrast, when an *employer* fails to pay contributions, and the plan's fiduciaries do not pursue the claim, the Secretary typically sues the fiduciaries for failing to enforce the plan's rights. . . . In these cases, the Department's position is that the employer's failure to pay its contributions does not constitute a breach of fiduciary duty, and the Department lacks the authority to sue the employer directly.

*In re Halpin*, 566 F.3d at 289–90 (citing Department of Labor's amicus brief). But the Department has also said that the plan assets determination "[']requires consideration of any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved.'" *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d

8

740, 745 (6th Cir. 2014) (quoting U.S. Dep't of Labor, Advisory Op. No. 92-24A (Nov. 6, 1992)).

Numerous courts agree, or at least mostly agree, with the Department's position. The Eleventh Circuit has provided that "[t]he proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003). The Third Circuit has stated, "We see no reason to disagree with the Secretary's legal argument that the ordinary notions of property rights determine whether an asset is a plan asset, and that we should look to the plan and the plan documents in making this determination." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 428 (3d Cir. 2013); *see also Trustees of Nat. Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 455 & n.1 (E.D. Pa. 2001) (explaining that "courts in the Third Circuit look to the terms of the agreement under which the obligation to pay the contributions arise" to determine whether an employer contribution is a plan asset). And the Ninth: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000); *see also Trustees of S. Cal Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1162–66 (C.D. Cal. 2006) (concluding that despite *Cline*'s absolute language, the Ninth Circuit did not foreclose the contract-language exception to the general rule that employer contributions are not plan assets).

The Second and Tenth Circuits have taken only a slightly different approach. Both Courts of Appeal still hold that due-and-owing employer contributions are not plan assets. *In re Halpin*,

566 F.3d 286, 290 (2d Cir. 2009) ("We agree with the Department's interpretation that employer contributions become assets only after being paid. . . . Under ordinary notions of property rights, if a debtor fails to meet its contractual obligations to a creditor, the creditor does not automatically own a share in the debtor's assets." (internal quotation marks omitted)); *In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005) ("Under ordinary notions of property rights, an ERISA plan does not have a *present interest* in the unpaid contributions until they are actually paid to the plan. In other words, the plan cannot use, devise, assign, transfer, or otherwise act upon contributions that it has not yet received.").

But the Second and Tenth Circuit go further and hold that the contractual right to collect due-and-owing employer contributions (as opposed to the contributions themselves) *are* plan assets. *In re Halpin*, 566 F.3d at 291; *In re Luna*, 406 F.3d at 1199–1201. Even so, the Second Circuit's rule is that because due-and-owing employer contributions are not plan assets (absent a contract to the contrary), a corporate official's decision to pay other company obligations instead of making plan contributions is not a breach of fiduciary duty. *In re Halpin*, 566 F.3d at 286, 290. And the Tenth Circuit, although resting its decision not on the plan-assets prong of the fiduciary inquiry but instead on the management-or-disposition prong, *see* 29 U.S.C. § 1002(21)(A)(i), reaches the same result: "[t]he act of failing to make contributions to the Funds cannot reasonably be construed as taking part in the 'management' or 'disposition' of a plan asset. The asset in question, it must be remembered, is the Trustees' contractual right to collect the unpaid contributions, and the [corporate officers] exercised no control over how the Trustees manage or dispose of that asset." *In re Luna*, 406 F.3d at 1204.

Although, as noted, the Sixth Circuit has not directly addressed the question, it has favorably quoted the Eleventh Circuit's "proper rule": "Traditionally, the 'proper rule, developed

by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.'" *In re Bucci*, 493 F.3d 635, 642 (6th Cir. 2007) (quoting *ITPE*, 334 F.3d at 1013). Further, some district courts in the Sixth Circuit have followed the Eleventh Circuit's decision in *ITPE. See Trustees For Michigan BAC Health Care Fund v.C.S.S. Contracting Co., Inc.*, No. 07-12331, 2008 WL 1820879, at *5 (E.D. Mich. Apr. 22, 2008) ("This Court agrees with the reasoning of *ITPE*, that unpaid employer contributions become plan assets when due only when an agreement between the parties explicitly so provides."); *Teamsters Local 1164 Welfare Fund v. AAA Pipe Cleaning Corp.*, No. 1:08 CV 2609, 2010 WL 454803, at *8 (N.D. Ohio Jan. 4, 2010) ("District Courts in the Sixth Circuit have relied on [*In re Bucci*] and *ITPE* in holding unpaid employer contributions do not constitute plan assets unless expressly agreed to by the parties."); *cf. Iron Workers' Local No. 25 v. Future Fence Co.*, No. 04 73114, 2006 WL 2927670, at *3 (E.D. Mich. Oct. 12, 2006) ("Plaintiffs do not point to any provision in the CBAs—or in fact in any other document— specifically committing the individual signing the CBA on behalf of an employer to personal liability for ERISA contributions.").

This precedent is consistent with the reasoning behind the rule that unpaid employer contributions are not plan assets (unless the parties contract otherwise):

> if unpaid employer contributions were plan assets, the employer would automatically become an ERISA fiduciary once it failed to make the payments. As such, the employer would owe the plan undivided loyalty at the expense of competing obligations—some fiduciary—to the business, and to others such as employees, customers, shareholders and lenders, and an undifferentiated portion of the companies['] assets would be held in trust for the plan. It is difficult to envision how proprietors could ever operate a business enterprise under such circumstances.

*In re Halpin*, 566 F.3d at 292. The *In re Halpin* court concluded, "[i]t is highly unlikely—indeed inconceivable—that Congress intended such a result." *Id.*

11

The Court finds the decisions of the Second, Third, Ninth, Tenth, and Eleventh Circuit Courts of Appeal persuasive and concludes that Count III fails to state a claim for relief. The Trustees have not alleged that Scott, Stephen, or Jacobson actually made employer contributions and then used those vested plan assets to pay H.B. Stubbs' debts. Instead, Count III unequivocally provides that the employer contributions were "unpaid," i.e., that Scott, Stephen, and Jacobson paid other creditors "instead of" paying the funds. (Compl. ¶¶ 28, 31.) Nor have the Trustees pled contract language indicating that H.B. Stubbs' contributions became vested plan assets once due, or even included with their Complaint the relevant agreements such that the Court might determine for itself whether the H.B. Stubbs entities and the funds agreed that H.B. Stubbs' contributions would become plan assets once due. (*See generally*, Compl.) It is thus implausible that Scott, Stephen, or Jacobson acted with authority or control over plan assets when they paid H.B. Stubbs' other creditors before the funds. It follows that Count III does not adequately plead that Scott, Stephen, or Jacobson breached any fiduciary duties imposed by ERISA and owed to the funds.

**B.**

The Trustees, however, cite case law from this district that is seemingly contrary to the position taken by the Second, Third, Ninth, Tenth, and Eleventh Circuit Courts of Appeal. The Court's research also uncovered case law from outside the Eastern District of Michigan that is directly contrary to the rule that outstanding employer contributions are not plan assets unless plan language says otherwise. *Board of Trustees of Airconditioning & Refrigeration Industries Health & Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*, 99 F. Supp. 2d 1115 (C.D. Cal. 1999). Neither the Trustees' cases nor this Court's research persuade the Court to deviate from its conclusion.

12

First, in *J.R.D. Mechanical*, a court in the Central District of California "reject[ed]" the defendants' distinction "between employer contributions in the form of employee wage deductions and other employer contributions." 99 F. Supp. 2d at 1120. The court acknowledged that "the Trust Agreements [did] not specify that unpaid employer contributions are vested assets of the Trust Funds," but found that "such contributions, regardless if they [were] deducted from wages, [were] due and owing on the tenth day of the month following the month in which the responsibility for such contributions are incurred"; it followed that "[i]nherent in the Trust Agreements [was] the concept that employer contributions become trust assets immediately after employees earn their wages." *Id.*

The Court does not find *J.R.D. Mechanical* persuasive. First, its viability is in doubt after the Ninth Circuit's statement in *Cline*, 200 F.3d at 1234: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation . . . ." *See also Motion Picture Lab. Technicians & Film Editors Local 780 Pension Fund v. Astro Color Labs., Inc.*, No. 01 C 2096, 2002 WL 596364, at *2 (N.D. Ill. Apr. 17, 2002) ("*J.R.D.*'s holding appears to have been overruled by *Cline* . . . ."). Second, in reaching its conclusion, the *J.R.D.* court explained that it was "not persuaded by the analysis utilized by several courts that employer contributions are assets only if the contracts state that such contributions are 'vested' in or 'due and owing' the Trust Funds" given the "Second Circuit's decision in *United States v. LaBarbara*, 129 F.3d 81 (2nd Cir. 1997)." *J.R.D.*, 99 F. Supp. 2d at 1120 n.4. In particular, the court stated that "the Second Circuit [had] held that delinquent employer contributions were plan assets." *Id.* at 1121. But after *J.R.D.*, the Second Circuit clarified that *LaBarbara* did not so hold: "in *LaBarbara*, [w]e did not find that the unpaid funds were plan assets; rather, we concluded that [the company's] contractual obligation to the

[ERISA-governed] plan was a *chose in action,* and hence an asset." *In re Halpin*, 566 F.3d at 291. In short, the Court declines to follow a decision that may not be good law and, at a minimum, has had one of its primary rationales undermined by subsequent precedent.

As to the cases from this district, the Trustees assert that the well-settled rule is that employer contributions are plan assets once they become due. (Dkt. 51, Pls.' Resp. to Defs.' Mot. at 7–8.) They say that "the Eastern District of Michigan" has held that "an employer's contributions become plan assets when they become due." (Pls.' Resp. at 7–8.) And, "It is clear that the Judges of the Eastern District of Michigan have consistently held that contributions become plan assets when they become due and owing." (Pls.' Resp. at 8.) In support of these assertions, the Trustees rely primarily on *Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers of Michigan, Inc.*, 608 F. Supp. 2d 873 (E.D. Mich. 2009), and authorities cited therein, and to a lesser extent, *Trustees of Detroit Carpenters Fringe Benefit Funds v. Nordstrom*, 901 F. Supp. 2d 934 (E.D. Mich. 2012). (Pls.' Resp. at 8–9 & n.4–13.)

There are statements in both *M & P Master Plumbers* and *Nordstrom* that support the Trustees' position. In *M & P Master Plumbers*, various employee benefit funds sued the sole shareholder and officer of M & P, Matthew Panknin, for breach of ERISA-imposed fiduciary duties because he had not made required contributions to the funds. *Id.* at 875–76. In an attempt to avoid personal liability, Panknin argued that "because he never withheld or designated monies for purposes of making fringe benefit contributions, those funds never became plan assets." *Id.* at 876. The court framed the question presented this way: "The Sixth Circuit has yet to consider exactly when unpaid benefit contributions become plan assets under ERISA. Nor has any court, seemingly, directly addressed Panknin's novel argument that an employer is only responsible for unpaid contributions when he formally withholds them from employee wages for purposes of

14

making fringe benefit contributions." *Id.* at 876. The court then stated, "Judges in this district have repeatedly held that contributions are plan assets as soon as they are *due and owing.*" *Id.* at 877 (citing *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d 794, 805 (E.D. Mich. 2004); *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, LLC*, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004); *Trustees of Mich. Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 371 (E.D. Mich. 2005); *United States v. Grizzle*, 933 F.2d 943, 946–48 (11th Cir. 1991); *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2nd Cir. 1997)); *accord Trustees of Iron Workers Local 25 Pension Fund v. Crawford Door Sales, Inc.*, No. 09-CV-12370-DT, 2010 WL 1526363, at *4 (E.D. Mich. Apr. 16, 2010) (quoting *M & P Master Plumbers*, 608 F. Supp. 2d at 877). The *M & P* court concluded,

> Ultimately, Panknin's argument for lack of personal liability—that because money was never collected for purposes of paying fringe benefit contributions, no employee contributions were "withheld" or misappropriated as a matter of law—does not overcome the principle that unpaid contributions become plan assets when due. Panknin has cited no case law, and this Court has found none, in which the courts excused unpaid contributions on this formalistic basis.

*M & P Master Plumbers*, 608 F. Supp. 2d at 879.

*Nordstrom* presents similar facts and reasoning. There, Michael Nordstrom, the sole owner and officer of a construction company, Eagle Construction Services, Inc., used Eagle's income to pay "labor, payroll taxes, union dues, materials, bonds, equipment rental, workers compensation insurance, general liability insurance, taxes, professional fees, rent and utilities." 901 F. Supp. 2d at 936–37. But Eagle did not make any fringe benefit contributions. *Id.* at 937. Employee-benefit funds sued, seeking to hold Nordstrom personally liable for breach of ERISA-imposed fiduciary duties. *Id.* Nordstrom defended by arguing that "the unpaid contributions owed to the Plaintiff Funds [were] not 'plan assets.'" *Id.* at 940. The court, citing its prior

decision in *M & P*, disagreed: "Although the Sixth Circuit has not addressed the issue of when unpaid benefit contributions become plan assets, this Court and other judges in this district have repeatedly held that pension and benefit fund contributions are plan assets as soon as they are *due and owing*. . . . These cases universally treat delinquent payments to ERISA funds as de facto mismanagement of plan assets." *Id.* at 940–41 (citing cases). In support of this statement, the *Nordstrom* court relied on the same cases cited in *M & P*, along with *Plumbers Local 98 Defined Benefit Funds v. Controlled Water, Inc.*, No. 03-72888, 2006 WL 2708544, at *4 (E.D. Mich. 2006), an opinion by the same judge who authored *M & P* and *Nordstrom*. *See Nordstrom*, 901 F. Supp. 2d at 940.

Although the Trustees believe otherwise, the Court considers the language that they rely upon from *M & P* and *Nordstrom* to be dicta. This is because in both *M & P* and *Nordstrom*, the court found that the employer and the funds had agreed that employer contributions would become vested plan assets once due. *See M & P Master Plumbers*, 608 F. Supp. 2d at 879 ("[T]he CBA and trust agreements in this case simply do not contemplate Panknin's excuse; rather, by their terms, they set out a clear obligation to make contributions on a monthly basis and to treat these unpaid contributions as inalienable plan assets. . . . Article IX of the agreement further states: 'No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind'"); *Nordstrom*, 901 F. Supp. 2d at 941 ("[T]he CBA and Carpenters Pension and Benefit Fund trust agreements, by their terms, set out a clear obligation to make contributions on a monthly basis and to treat these unpaid contributions as inalienable plan assets. . . . [T]he Trust Agreements state that 'no benefit payable or to be payable at any time under the Plan shall be subject in any

16

manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, lien or charge' of any kind.").

The Court's reading of *M & P* and *Nordstrom* is further supported by an examination of the precedent that those decisions relied upon. In one Eastern District of Michigan case cited in *M & P* and *Nordstrom*, the court acknowledged the conflicting case law and then concluded, "[u]nder either of the above approaches," the unpaid contributions were plan assets once due because that is what the trust agreement provided. *McGuire Steel Erection*, 352 F. Supp. 2d at 804. In another Eastern District of Michigan case cited in *M & P* and *Nordstrom*, the court simply quoted a footnote from a Middle District of Tennessee opinion: "'[a] company's contributions to benefit funds, such as in this case, constitute plan assets under 29 U.S.C. § 1002(21)(A) as they become due.'" *Nicolas Equipment*, 353 F. Supp. 2d at 854 (quoting *S. Elec. Health Fund v. Kelley*, 308 F. Supp. 2d 847, at 865 n.10 (M.D. Tenn. 2003)). But the three decisions that the *Kelley* court cited all involved contract language providing that employer contributions were plan assets once due. *See Galgay v. Gangloff*, 677 F. Supp. 295, 301 (M.D. Pa. 1987) ("[T]he court by no means holds as a general rule that employers may be liable under ERISA as fiduciaries merely because of delinquent contributions to a multi-employer plan . . . . The key to the court's ruling in this situation is the clear and undisputed language of the Anthracite Wage Agreement . . . stating that title to all monies 'due and owing' the plaintiff fund is 'vested' in the fund."); *Connors v. Paybra Min. Co.*, 807 F. Supp. 1242, 1246 (S.D.W. Va. 1992) (following *Galgay* where wage agreement stated "*Title to all the monies* paid into *and/or due and owing* to the Trusts specified in this Article *shall be vested in and remain exclusively in the Trustees* of those Trusts" (emphases in original)); *Hanley v. Giordano's Rest., Inc.*, No. 94 CIV. 4696 (RPP), 1995 WL 442143, at *4–5 (S.D.N.Y. July 26, 1995) (following both *Galgay*

and *Connors* where "[u]nder the Trust Agreement, contributions required pursuant to the collective bargaining agreement 'shall be deemed Trust assets whether or not collected.'"). As for *Accura Concrete Walls*, another Eastern District of Michigan decision cited in *M & P* and *Nordstrom*, it obtained its rule from *Nicolas* and *LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997). *See* 408 F. Supp. 2d at 373. *Nicolas* has been addressed. As for *LoPresti*, the Court believes that *In re Halpin*, discussed above, sets forth the Second Circuit's position on this issue. The same is true for *Grizzle*, the Eleventh Circuit case cited in *M & P* and *Nordstrom*: the Eleventh Circuit has made its position clear in *ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003). *See also Pantoja v. Edward Zengel & Son Exp., Inc.*, 500 F. App'x 892, 895 (11th Cir. 2012) ("[W]e have held that unpaid employer contributions are not 'plan assets' unless specific and clear language in the plan documents or other evidence so indicates.").

In short, the Court is not persuaded that *M & P* or *Nordstrom* or the cases cited therein, are wholly irreconcilable with the authority this Court has relied upon from the Second, Third, Ninth, Tenth, and Eleventh Circuit Courts of Appeal.

## C.

And even if the Court were to agree with the Trustees to the extent that the unpaid employer contributions were plan assets once due, it does not necessarily follow that Scott, Stephen, or Jacobson breached fiduciary duties owed to the funds by paying H.B. Stubbs' other debts instead of the funds. On this point, the Court finds *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67 (6th Cir. 2012) persuasive.

In *AirTab*, trustees of employee benefit funds governed by ERISA sought to hold the Ileogbens (one an owner and president of AirTab, Inc., the other a "coordinator" at AirTab) personally liable for breaching fiduciary duties they owed to the funds. *Id.* at 68. The Ileogbens

18

argued that they "could not be held personally liable for the unpaid contributions because they were not fiduciaries as defined by ERISA and the contributions were not assets of an ERISA plan." *Id.* The Sixth Circuit Court of Appeals held, "[w]e need not reach the question of whether the unpaid contributions were plan assets under the terms of the collective bargaining agreement, because even if they were, the Ileogbens were not fiduciaries under ERISA and so cannot be personally liable." *Id.* at 69. In reaching this conclusion, it relied on the Eleventh Circuit's decision in *ITPE* to reason that it was "the trustees that [had] control over the plan's assets according to the [collective bargaining agreement] and other contractual documents." *Id.* Further, said the Sixth Circuit, "the Ileogbens' alleged refusal to pay the funds as required under the CBA does not rise to the level of exercising discretionary control or authority such that fiduciary status attaches." *Id.* Relying on *In re Luna* and *Future Fence*, the Court explained, "[t]his is a situation in which the plaintiff is attempting to transform an employer's nonpayment of a contribution into an exercise of control over a disposition of a plan's asset. We cannot find the Ileogbens to be fiduciaries under such an argument." *AirTab*, 482 F. App'x at 70; *accord Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) ("A corporate officer facing limited cashflow who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty when he makes those decisions wearing his corporate officer hat rather than his fiduciary duty hat.").

The reasoning of *AirTab* and *Bjorkedal* fit the allegations of the Trustees' Complaint. Under those cases, the Trustees' assertion that Scott, Stephen, and Jacobson breached fiduciary duties owed to the funds by paying the H.B. Stubbs entities' other creditors instead of the funds does not, without more, show that Scott, Stephen, and Jacobson exercised the requisite authority

or control over plan assets such that they acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i).

## IV.

Based on the foregoing, the Court enters the following ORDER. Pursuant to the agreement of the parties, Counts II and IV of the Complaint are DISMISSED WITHOUT PREJUDICE. (*See* Dkt. 51, Pls.' Resp. at 5; Dkt. 52, Defs.' Reply at 2.) The Court DISMISSES Count III of the Complaint for reasons discussed at length. Defendants, however, have not persuaded the Court that the Trustees cannot plead facts that remedy the pleading deficiencies identified above. (*See* Defs.' Reply at 5.) So dismissal of Count III is WITHOUT PREJUDICE and Defendants' Motion to Dismiss Counts II, III, and IV (Dkt. 36) is only GRANTED IN PART. On the other hand, the Trustees' request in their response brief for leave to amend their Complaint (*see* Pl.'s Resp. at 7) is procedurally improper. *See Jung v. Certainteed Corp.*, No. 10-2557, 2011 WL 772907, at *1 (D. Kan. Mar. 1, 2011) ("Generally, a plaintiff's bare request in a response to a motion to dismiss is not a proper vehicle for seeking leave to amend."); Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). So the Court DENIES that request. As of now, only Count I remains part of this lawsuit.

**The parties are to appear for a status conference on August 12, 2014, at 2:00 p.m.**

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2014

20

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 17, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson