UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF CARPENTERS' EMPLOYEE BENEFITS FUND; TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF CARPENTERS' ANNUITY FUND; TRUSTEES OF CARPENTERS' PENSION TRUST FUND – DETROIT AND VICINITY; TRUSTEES OF THE DETROIT CARPENTRY JOINT APPRENTICESHIP AND TRAINING FUND; TRUSTEES OF THE U.B.C. ADVANCEMENT FUND; TRUSTEES OF THE CARPENTERS' WORKING DUES FUND; TRUSTEES OF THE CARPENTERS' SPECIAL ASSESSMENT FUND; THE MICHIGAN REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; | Case No. 2:14-cv-11393 Honorable Laurie J. Michelson |

      Plaintiffs;

and

COMERICA BANK,

      Intervening Plaintiff;

v.

H.B. STUBBS COMPANY, n/k/a H.B. STUBBS COMPANY, L.L.C.; H.B. STUBBS HOLDINGS, INC.; H.B. STUBBS COMPANY, L.L.C. – EAST; H.B. STUBBS COMPANY, L.L.C. – WEST; H.B. STUBBS PROPERTIES, L.L.C; SCOTT STUBBS; STEPHEN H. STUBBS; and KENNETH W. JACOBSON;

      Defendants.

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND FIRST AMENDED COMPLAINT [72]**

This case involves the failure of several entities operating under the "H.B. Stubbs" name to make fringe benefit contributions to certain ERISA-governed funds. Plaintiffs, the Trustees of the funds, previously sought leave to amend their complaint to add a breach of fiduciary duty claim against the individual corporate officer Defendants: Scott Stubbs, Stephen H. Stubbs, and Kenneth W. Jacobson. The Court denied this request. The Trustees now propose another amendment that would add a pierce-the-corporate-veil claim in an attempt to impose personal liability on the individual defendants. Defendants contend that the proposed amendment is futile because the Trustees have not adequately pled a pierce-the-corporate-veil claim.

The Court has studied the parties' briefs and will proceed without oral argument. *See* E.D. Mich. LR 7.1(f). So advised, this Court will deny Plaintiffs' motion for leave to amend the first amended complaint.

## I.

The H.B. Stubbs companies were in the business of "exhibit and event marketing." (Dkt. 36, Defs.' Mot. to Dismiss at 5.) These companies designed and set up exhibits at shows around the country. (*Id.*) But by March 2014, the companies had lost several valuable customers, downsized, and ended up with nearly $3,000,000 in debt to Comerica Bank. (*Id.*; Dkt. 31, Comerica's Mot. to Intervene Ex. A, Forbearance Agreement). The H.B. Stubbs companies have argued that Comerica has "a first priority security interest on all of the assets of each of the H.B. Stubbs entities to secure its loan—which, by any calculation, is in excess of the value of the assets of H.B. Stubbs." (Defs.' Mot. to Dismiss at 5.) Comerica intervened to protect its security

interest in the remaining assets of the H.B. Stubbs companies. (Comerica's Mot. to Intervene at ¶¶ 16, 17, 21; Dkt. 48, Comerica's Concurrence in Defs.' Mot. to Dismiss at 5.)

Given the HB Stubbs companies' precarious financial situation, they cannot pay the Trustees all of the fringe benefit contributions that their funds are allegedly owed. Thus, the Trustees are seeking to hold Scott, Stephen, and Jacobson personally liable. They previously attempted to plead that these officers were personally liable under ERISA for breaches of fiduciary duties. The Court found, however, "that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." *Trustees of Michigan Reg'l Council of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*, 33 F.Supp.3d 884, 890–91 (E.D. Mich. July 17, 2014). "Because the Trustees had not 'pled contract language indicating that H.B. Stubbs' contributions became vested plan assets once due . . . this Court held that it was 'implausible that Scott, Stephen, or Jacobson acted with authority or control over plan assets when they paid H.B. Stubbs' other creditors before the funds.' 'It follow[ed] that [Plaintiffs did] not adequately plead that Scott, Stephen, or Jacobson breached any fiduciary duties imposed by ERISA and owed to the funds.'" *Trustees of Michigan Reg'l Council of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*, — F.3d —, No. 2:14-CV-11393, 2014 WL 8046125 (E.D. Mich. Oct. 27, 2014) (citations omitted). The Court thus dismissed the ERISA breach-of-fiduciary duty claim without prejudice.

Plaintiffs then filed a motion to amend, seeking to replead the claim. In their proposed First Amended Complaint, Plaintiffs attached Addenda to the relevant trust agreements providing that, as of January 14, 2014, the employer contributions that H.B. Stubbs agreed to pay to the funds became plan assets once due and owing. But the proposed First Amended Complaint still failed to adequately plead a breach of fiduciary duty claim because it lacked allegations that the

3

individual Defendants knew or should have known of these Addenda. *H.B. Stubbs Co.*, 2014 WL 8046125, at \*12–15. The Court thus denied Plaintiffs' motion to add a claim that Scott, Stephen, and Jacobson breached fiduciary duties by electing to pay other expenses instead of making contributions to the funds. *Id.* at \*16.

Plaintiffs now move to amend their Amended Complaint to add a pierce-the-corporate-veil claim in an attempt to impose the Stubbs companies' liability on Scott, Stephen, and Jacobson. (Dkt. 72, Pls.' Mot. to Amend; Dkt. 71, Pls.' First Amended Complaint.)

## II.

The Trustees emphasize that leave to amend "shall be freely given when justice so requires" and that, in general, plaintiffs "ought to be afforded an opportunity" to test the merits of their claims. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The defendants assert, however, that leave to amend should not be granted because the Trustees' piercing claim is futile. (Dkt. 74, Defs.' Resp. to Pls.' Mot. for Leave to Amend at 2–3.)

A court may deny a motion to amend as futile when the proposed amendment would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). A court may begin the 12(b)(6) analysis with the removal of legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court then asks whether the remaining complained-of facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A complaint will survive a motion to dismiss only when it contains a plausible claim. *Id.* at 679 (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 556 (2007)). The court uses its "judicial experience and common sense" to answer the "context-specific" question of whether the well-pled facts establish a claim that is plausible rather than

4

merely possible. *Id.* A plausible claim must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.

### A.

The parties agree that federal common law provides the veil-piercing standard in ERISA cases. *See Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 586 (6th Cir. 2006). The Sixth Circuit applies a three-factor test: a court determines whether there are "substantial reasons" to pierce a corporate veil "after weighing . . . (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators." *Michigan Carpenters Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 384 (6th Cir. 1991). Specific factors that shed light on these broader inquiries include the "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302–03 (6th Cir. 2005). And the Sixth Circuit has indicated that, perhaps, courts should be more willing to pierce corporate veils in ERISA cases, particularly if fraud occurs. *See C.J. Rogers*, 933 F.2d at 384–85 (6th Cir. 1991) (quoting *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 705 (6th Cir. 1988) ("[D]eference to the corporate form may be particularly inappropriate in relation to ERISA because Congress enacted ERISA in part to protect employees who were being deprived of anticipated benefits by a corporate sham.")).

5

The parties disagree, however, on whether fraud is a dispositive factor in the veil-piercing analysis. Defendants argue that "fraud or something like fraud" must always be proven before the corporate veil can be pierced. (*See* Defs.' Resp. at 6 (citing *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 674 (6th Cir. 2006)).) The Trustees argue that no single factor in the veil-piercing test is dispositive. (Dkt. 76, Pls.' Reply at 4.)

Defendants' authority is not on point. They quote their proposed fraud-or-something-like-it requirement from the *Prime* court's explanation of "Delaware law." *See Prime Hospitality Corp.*, 462 F.3d at 674 (quoting *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989)). *Prime* answered whether Delaware and Tennessee share similar veil-piercing rules, *id.* at 676, but did not address the federal common law of ERISA veil piercing. *Cf. N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 335 (6th Cir. 1990) ("Although state law cases may provide guidance in fashioning the content of federal law, they are not binding[.]"). Defendants also cite a Sixth Circuit case, but the cited passage is dictum: "We emphasize that the case at bar . . . is not a corporate-veil piercing case." *Scarbrough v. Perez*, 870 F.2d 1079, 1084 (6th Cir. 1989) (internal quotation marks omitted). But Plaintiffs have also cited no binding authority.

There is no Sixth Circuit law that definitively addresses whether the Court needs to find "fraud or something like fraud" before the corporate veil can be pierced. Persuasive authority suggests that the Court could still pierce the veil in the absence of fraud or something like it. *See United States v. Van Diviner*, 822 F.2d 960, 964–65 (10th Cir. 1987) (requiring "injustice or inequity" before the corporate veil can be pierced under federal common law, but declining to require actual fraud); *Cunningham v. Rendezvous, Inc.*, 699 F.2d 676, 680 (4th Cir. 1983) ("[I]t is clear . . . that the corporate veil may be pierced in appropriate circumstances even in the

absence of fraud or wrongdoing[.]"); *Cheatham v. R.C.A. Rubber Co. of Am.*, No. 1:11-00006, 2013 WL 3812104, at *11 (M.D. Tenn. July 22, 2013) ("None of the three general factors is dispositive . . . in determining whether there is a substantial reason for disregarding corporate status."). *But see United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1093 (1st Cir. 1992) (holding fraudulent intent to be an indispensable element of ERISA veil-piercing claims).

Ultimately, the Court does not resolve the parties' dispute about the law. Even if the Court assumes Plaintiffs are correct that no single factor in the veil-piercing test is dispositive, their veil-piercing claim is still futile for lack of particularity.

## B.

The key allegations in the Proposed Second Amended Complaint against Scott, Stephen, and Jacobson are these: the three individual defendants "(a) failed to follow business formalities, (b) failed to adequately capitalize the businesses which has caused a failure to remit contributions to Plaintiffs, (c) commingled personal and business assets, and (d) committed fraud by taking monies from the business while failing to make fringe benefit contributions to Plaintiffs." (Dkt. 73, Pls.' Brief in Supp. of Mot. for Leave to Amend Ex. A, Proposed 2d Am. Compl. at ¶ 24.) The Trustees further assert that the three officers "failed to follow business formalities, had personal knowledge of H.B. Stubbs' undercapitalization, and with the requisite intent fraudulently and improperly diverted monies which were to be paid for the benefit of its employees." (Proposed 2d Am. Compl. at Pg ID 1076–77.) Save for the allegations regarding "taking monies from the business" and "fraudulently and improperly divert[ing] monies," these allegations simply mirror the legal standard. *See Aguirre*, 410 F.3d at 302 (providing that veil-piercing factors a court is to consider include "undercapitalization of the corporation, . . . the

separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities"). The Court therefore disregards these legal conclusions and focuses on whether the remaining factual allegations state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Plaintiffs have adequately pled the injustice factor: the corporate entities' non-payment of approximately $700,000 worth of ERISA benefits as of May 15, 2014. (Proposed 2d Am. Compl. ¶¶ 22, 23.) Defendants rightly point out, however, that a similar degree of injustice exists in most contract or tort cases where the plaintiffs seek recovery through veil piercing. (*See* Dkt. 74, Defs.' Resp. to Pls.' Mot. for Leave to Amend at 6.) Thus, an allegation of non-payment does not by itself make a veil-piercing claim plausible. So the Court turns to the remaining two considerations in the corresponding allegations of the Proposed Second Amended Complaint.

Plaintiffs have not pled any specific factual allegations regarding disrespect of the corporate form. So that consideration does not help the Trustees make a plausible piercing claim.

And the factual allegations regarding fraud are equally deficient. Critically, Plaintiffs do not plead to whom money was diverted—or when such actions occurred. As noted, they simply say that Scott, Stephen, and Jacobson "t[ook] monies from the business" and "fraudulently and improperly diverted monies." But did they take H.B. Stubbs' monies for themselves? Did they divert those monies to themselves? And, if so, when? Or did they simply pay other corporate creditors ahead of the funds? The Second Proposed Amended Complaint does not say. And these facts are especially important given the Court's earlier ruling that the unpaid contributions were not specifically identified as assets of the funds until January 14, 2014.

Thus, with only one of the three factors plausibly weighing in favor of veil piercing on these pleadings, the Court finds that the Trustees have not pled facts sufficient to turn veil-

piercing from a possible source of relief into a plausible one. *See Twombly*, 550 U.S. at 555; *Nw. Ohio Adm'rs, Inc. v. Charles F. Mann Painting Co.,* No. 10-180, 2010 WL 1524374, at * 1 (N.D. Ohio Apr. 14, 2010) (finding plaintiff failed to plead a veil-piercing claim because "[t]he Complaint does not meet the plausibility standard with regard to the individual Defendants—it does not allege the egregious facts necessary to impose personal liability"); *cf. Sidney Weinberger Homes*, 872 F.2d at 705 (finding the following specific facts proved an ERISA veil-piercing claim: the individual loaned money to the corporation without writing formal agreements, paid personal expenses with corporate money, paid corporate expenses with personal money, operated the corporation solely for his own personal benefit, kept inadequate records, and "ended" the corporation by withdrawing corporate money while some creditors went unpaid). It follows that the proposed amendment is futile.

## IV.

For the above reasons, the Court DENIES WITHOUT PREJUDICE Plaintiffs' Motion for Leave to Amend. (Dkt. 72.)

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  April 29, 2015


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 29, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

9